## STATE v. H. E. BARNARD.

*Injury to stock in enclosure not surrounded by lawful fence—*
*Carelessness supplies the place of criminal intent, when.*

On trial of an indictment for killing another's stock in the defendant's enclosure, not surrounded by a lawful fence, it appeared that the defendant recklessly shot at cattle in his corn field, to frighten and run them out, and killed the prosecutor's mule, which at the time he did not see, the corn being very high ; *Held,* that he is criminally responsible. The carelessness with which the act was done supplies the place of criminal intent, whether the defendant had license from the owner of the cattle to shoot at them, or not.

INDICTMENT for misdemeanor tried at Spring Term, 1883, of BUNCOMBE Superior Court, before *Avery, J.*

The defendant is charged with killing a mule, the property of M. J. Fagg, in violation of section 95, chapter 32 of Battle's Revisal, which provides that if any person shall kill or abuse any horse, mule, &c., the property of another, in an enclosure not surrounded by a lawful fence, such person shall be guilty of a misdemeanor, and on conviction shall be fined or imprisoned at the discretion of the court.

It was proved and admitted that the mule was killed, as charged, in an enclosure not surrounded by a lawful fence.

The defendant testified in his own behalf, that on the morning mentioned by the state's witnesses he was informed that Fagg's mules were in his corn, but being unwell he refused then to get out of bed ; that soon after, hearing his daughter hallooing at cattle in his field, he arose, got his gun, and went into the field ; that the corn was very high ; he saw his daughter running some cattle out, and he shot at them, but did not see the mule when he fired, nor shoot at it, and did not know the mule was wounded until he went to the town of Asheville on the same day ; that the cattle were running very fast across the corn rows, and he shot

down the rows, and after shooting, he discovered that the cattle belonged to one Patton, who had a slaughter-pen on the opposite side of the road.

With the view of corroborating the defendant by Burnett, and sustaining the position taken by his counsel that if he shot at Patton's cattle and hit Fagg's mule, he could not be convicted, the defendant proposed to prove that soon after he shot he went to said Burnett, mistaking him for Patton, the owner of the cattle, and told him he had shot at his cattle.

It was also proposed to prove by the defendant that he had permission from his brother and one Pope, whose cattle had frequently broken into his field, to shoot at the cattle in order to keep them out, and when he shot at Patton's cattle he thought they were either the cattle of his brother or of Pope. This was offered with the view of insisting that if defendant shot at Patton's cattle, mistaking them for the cattle whose owners had given him license to shoot at them in his field, and in so doing he killed the mule, he could not be convicted under this bill of indictment. But the court refused to admit evidence, as well as that in regard to the conversation with Burnett, and the defendant excepted.

The defendant's counsel asked for the following instructions:

1. That if defendant had license from his brother and Pope to shoot at their cattle, when in his enclosure, and shot at Patton's cattle by mistake, and in so shooting killed the prosecutor's mule, without knowing it, the defendant would not be guilty.

2. If defendant shot at Patton's cattle, though that shooting was unlawful, and, without any purpose or knowledge, hit and killed the prosecutor's mule, the killing would not be willful, and the defendant would not be guilty.

The instructions were refused, and the defendant excepted. Verdict of guilty; judgment; appeal by the defendant.

*Attorney-General,* for the State.
*Messrs. Davidson & Martin,* for defendant.

·ASHE, J.   We are of the opinion, in view of the facts as proved and admitted by the defendant himself, there is no error in the refusal to give the instructions asked, or to admit the evidence upon which they were predicated.

It is a general rule of the common law, which applies as well to indictments under statutes, that to constitute a crime there must be a criminal intent; and it is also a maxim of the law, that every man is presumed to intend the consequences of his acts.   It is upon this principle that whenever a man commits an act unlawful at the common law or made so by statute, the criminal intent is presumed.   It is a principle which applies to all violations of the criminal law: if, for example, a man is indicted for murder, and there is no other proof than the act of killing, the law presumes the act to be done intentionally and with malice, and pronounces it murder; yet if it is but a presumption, it may be rebutted by showing the act was committed upon sudden provocation, in self-defence, or under circumstances which gave him a reasonable cause to believe the existence of facts which excuse the act, although they do not really exist; but if so misled, he acts as he would be justified in doing were the facts what he believed them to be, he is legally innocent, provided the acts were done without any *fault or carelessness* on his part. Bishop Crim. Law, § 383.   The grounds of belief must be reasonable, and the acts must be performed without fault or carelessness.   "There is," says the same author in section 389, "little distinction, except in degree, between a positive will to do a wrong and an indifference whether wrong is done or not: on this ground carelessness is criminal, and within limits supplies the place of direct criminal intent."   By way of illustration, for example: If a person by *careless* and furious driving unintentionally run over another and kill him, it will be manslaughter; if a person in command of a steamboat by *negligence or carelessness* unintentionally run down a boat and the person in it is thereby drowned, he is guilty of manslaugter.   *Ibid.*

So, if workmen throw stones, rubbish, or other things from a house, in the ordinary course of their business, by which a person underneath is killed, if they look out and give timely warning beforehand to those below, it will be accidental death; if without such caution, it will amount to manslaughter, at least. It was a lawful act, but done in an improper manner. Foster, C. L., 262. "It is not sufficient," says the same author, "that the act from which death ensueth be lawful or innocent: it must be done in a proper manner and with due *caution* to prevent mischief." And Mr. BISHOP says (§ 389) this doctrine of negligence producing death, is only one of the illustrations of the broader doctrine of carelessness. It pervades the criminal law in all its apartments, applying to all defences where there is room for its application.

We can see no reason why the principle does not apply to this case. The defendant, on the morning of the day of the shooting, was informed that Fagg's mules were in his corn, and soon after, hearing his daughter hallooing at cattle, he took his gun and went into his corn field. The corn was very high, and the cattle were running very fast across the corn-rows, and without waiting to see and ascertain whose cattle they were, he fired at them and killed the prosecutor's mule.

The defendant, in justification of the act, proposed to prove that his brother and one Pope, whose cattle had been in the habit of getting into his corn, had given him license to shoot their cattle, and when he shot at them he believed they were their cattle. Even if the testimony had been admitted, we do not perceive how it could have availed the defendant; for they were, in fact, the cattle of one Patton, and if, under the circumstances, he had shot one of his cows instead of Fagg's mule, it would have been an act of such carelessness as to have rendered the defendant criminally responsible, because he did not take any precaution to ascertain whether they were the cattle of his brother or Pope, but rashly and recklessly fired upon them. And when by his blind and indiscriminate firing at the cattle he shot the mule, his act

was the more criminally careless, because he knew or had reason to believe that the mule was in the corn, and probably in the very crowd of cattle at which he shot, although he says he did not see the mule when he fired.

Conceding that the defendant had the legal right to shoot at the cattle of his brother and Pope, and he believed at the time that they were their cattle, his conduct was such as, in our opinion, manifested not only a culpaple indifference to the consequences of his act, but such a degree of carelessness as, in contemplation of law, supplied the place of criminal intent.

There is no error.    Let this be certified, &c.

No error.                    .                Affirmed.